## Case No. 9,763.
### MOORE v. GREENE et al.
[2 Curt. 202.] [1]
Circuit Court, D. Rhode Island. Nov. Term, 1854.[2]

REAL PROPERTY — FRAUDULENT TRANSFERS — BILL TO SET ASIDE — STATUTE OF LIMITATION — TIME WHEN FRAUD DISCOVERED — WILL — EVIDENCE.

1. Under the laws of Rhode Island, a will of lands cannot be admitted as evidence of a devise, until it has been duly probated by the decree of a court having jurisdiction to admit it to probate.

2. To avoid the bar of the statute of limitations, set up in the answer, upon the ground of a concealed fraud, the bill must allege that the fraud was discovered within twenty years, and must show when and how it was discovered; and the evidence must satisfactorily support these averments.

[Cited in Martin v. Smith, Case No. 9,164; Baldwin v. Raplee, Id. 801; Re Dole, Id. 3,965.]

3. The statute of limitations bars equitable relief founded on a good legal title fraudulently suppressed or destroyed, in twenty years after the discovery of the fraud, in analogy to the statute bar operating in courts of law; for a court of equity will not relieve against fraud, after the lapse of such a time since its discovery, as would have barred the title at law, if no fraud had existed.

[Cited in Badger v. Badger, Case No. 718; Sullivan v. Portland & K. R. Co., Id. 13,596; Godden v. Kimmell, 99 U. S. 210.]

[Cited in brief in Butler v. Lawson, 72 Mo. 244; Kansas Pac. Ry. Co. v. McCormick, 20 Kan. 111.]

[This was a bill by Elizabeth Moore against Ray Greene and Benjamin W. Hawkins to set aside certain titles on the ground of fraud.]

Mr. Randall, for complainant.
Tillinghast & Bradley, contra.

CURTIS, Circuit Justice. This is a suit in equity. The bill states that John Manton, of Johnston, in the state of Rhode Island, died in the year 1767, leaving a will duly executed, to pass his lands, whereby he devised them to his two granddaughters, Lydia and Betsy Waterman, children of his then deceased daughter Anna, wife of Benjamin Waterman; that Betsy Waterman intermarried with Daniel Carpenter, and the complainant is her daughter and sole surviving heir. The bill further states, that at the time of his decease, John Manton left two other daughters, one the wife of Joshua Greene, and the other, the wife of Ephraim Pearce; and that the testator's three sons-in-law, conspiring together to defraud the two grandchildren of the lands devised to them, procured, by fraud, the town council, which then had jurisdiction over the probate of wills, to refuse probate of Manton's will, and thereupon to appoint an administrator. That, in further pursuance of their fraudu-

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]
[2] [Affirmed in 19 How. (60 U. S.) 69.]

lent design, they proceeded to, and did make partition by deed among themselves, in sev-eralty, of all Manton's lands, and then pro-cured the administrator of Manton, under a license from the general assembly of the province, to sell the lands to pay fictitious debts of Manton, which they pretended were due to some of them, and so obtained color-able titles to the lands in severalty, under which it is alleged the defendants now claim some of those lands which the bill seeks to recover. The defendant, Ray Greene, an-swers, that he holds by descent from his father, and purchase from other heirs of his father, certain lands, formerly belonging to Manton, purchased by his grandfather of the administrator of Manton, and devised by his grandfather to his father. He de-nies all knowledge or information of the fraud charged in the bill; avers, upon in-formation and belief, that his grandfather's purchase was legal and fair; and sets up the possession of his grandfather, of his father, and of himself, for a period of up-wards of eighty years, and the statute of Rhode Island for quieting possessions, in bar of the bill. The other defendant, Hawk-ins, while he does not admit that the lands held by him were ever lands of Manton, sets forth his title thereto by purchase, and also relies on the possession of himself and of those under whom he claims, and upon the same statute for quieting possessions, as a bar. He also denies all knowledge or information of the fraud alleged in the bill.

The complainant presents two titles. The first by devise to her mother, whose heir she is by the alleged will of John Manton, of one moiety of his lands. The second by descent to her mother from John Manton, one of whose heirs she was, being one of the two children of his deceased daughter.

The first of these titles it is not possible to sustain. This court can give no effect to a will of lands in Rhode Island, until it has been duly proved by the competent authority empowered to allow wills, and admit them to probate. Tompkins v. Tompkins [Case No. 14,091]; Mathewson v. Sprague [Id. 9,-278]. See Gaines v. Chew, 2 How. [43 U. S.] 646, and cases there cited. But if it were otherwise, there is no competent evidence in this case to show what the will of Man-ton was. The will itself is not produced, nor is there one witness examined in the cause who ever saw it, or can speak to any part of its contents. All there is upon the record on this subject, are certain traditions existing in the neighborhood, that Manton's will gave his lands to these two grand-children. Manifestly, this is wholly insuf-ficient, and the title by devise must be at once laid aside.

The other title by descent seems to be made out in proof, so far as respects the pedigree; and the first question is, assum-ing that the lands held by the defendants belonged to Manton at his decease, whether the bar of the statute of limitations can be got over. Before considering this question, it is proper to state, that it has not been in-sisted, nor could it be, consistently with what appears on the face of the bill, that the complainant is not within the statute, be-cause the alleged frauds had been kept con-cealed, so that the complainant, or those un-der whom she claims, had only discovered them within twenty years. For the bill al-leges, that as early as 1797, these alleged frauds were fully investigated in the course of a trial of an action brought by other heirs of Manton, and that that suit was brought in consequence of inquiries made by the complainant and the plaintiffs in that suit. And the bill also avers, that from the death of John Manton, in 1767, up to the year 1824, renewed and continual claims have been made by the heirs of Lydia and Betsy Waterman, of whom the plaintiff is one, for their portions of Manton's lands, as his rightful heirs at law, upon all persons in possession. It does not say, in terms, that those continual claims were founded on the frauds charged in this bill; but as no other ground of claim is therein suggested, the fair conclusion is, that during all this period, the frauds alleged have been known and insisted on. It is true, the bill alleges that the complainant was ignorant, until some time not specified, that Manton died seized of part of these lands, being those situate in the town of Gloucester; but as the public records of the town showed the fact, and as she did become apprised of it as soon as she caused them to be examined, and as the fact of his dying so seized, did not affect her title to relief, but only intro-duced another tract of land to which the same relief might be extended, it does not seem to be material, if she has recently made this discovery. But there is no proof that it is a recent discovery; and after a litigation which, according to the bill, has lasted since 1767, concerning the title of Manton's lands, there is no presumption that the complainant had not notice of what ap-peared on the public registry of titles of the town, where Manton was known to her, at one time, to have had extensive possessions. The bill does contain an averment, that ten years have not elapsed, since the discovery of the frauds of the sons-in-law and ad-ministrator of Manton; but it not only fails to show when and how it was discovered,— Stearns v. Page, 7 How. [48 U. S.] 829; Fisher v. Boody [Case No. 4,814],—but the averment is inconsistent with the other statements in the bill already detailed. I am of opinion therefore, that this case stands nakedly, upon the statute of limitations, the bill not averring such concealment and ig-norance of the alleged fraud, as to avoid the bar, if one exists upon the facts. For it is settled that the statute of limitations is ap-plied by a court of equity to a case of fraud, after the expiration of twenty years from

its discovery by the party defrauded. And it is equally clear, that if the complainant would avoid the bar of the statute of limitations, he must show by his bill the grounds of such avoidance. In Stearns v. Page, 7 How. [48 U. S.] 829, Mr. Justice Grier, in delivering the opinion of the court, speaking of charges of fraud where much time had elapsed, says, "And especially must there be distinct averments as to the time when the fraud was discovered, and what the discovery is, so that the court may see, whether by the exercise of ordinary diligence, the discovery might not have been before made." In Carr v. Hilton [Case No. 2,437], this court held, that to avoid the bar of the statute of limitations, the complainant must not only allege his ignorance of the fraud, but must show when and how it was discovered, and offer satisfactory evidence of the truth of these averments. These positions are deducible from settled rules of pleading. If a bill contains no sufficient matter to avoid the bar of the statute of limitations, the defendant may plead what is called a pure plea of that statute; and unless the complainant amends his bill, and inserts what he relies on as a reply to the statute, his suit is at an end. But if he does so amend, and avers infancy, coverture, or ignorance of fraud, he must support these averments, if they are denied, or he still fails to remove the bar. And as this bill does not contain any satisfactory statement, as to when or how the alleged fraud was discovered, and the case is entirely bare of evidence to show these facts, and the fraud is denied by the answers, the court cannot treat this as a case of secret fraud, discovered by the complainant within twenty years.

That those under whom the defendants claim, acquired an actual and open seizin in 1767, under deeds purporting to convey the fee-simple of the land, is shown by the bill. It details, with particularity, the different partition deeds, and deeds from Manton's administrator, charges them to be tainted with fraud, and avers, "whereby the said Lydia and Betsy Waterman, while infants, and their heirs were and have been wrongfully and unjustly defrauded, and ever since fraudulently kept out of possession of their rightful shares, proportions, and inheritances of, in, and to the large real estates of their maternal grandparent." Taking the averments of the bill together, they amount to this; that the three sons-in-law of Manton, entered, in 1767, under deeds conveying the lands in fee, and have ever since claimed by themselves or their heirs or grantees, to own the lands, and have kept out of possession the complainant, and all others claiming under the two granddaughters. It cannot be questioned therefore, that there is a bar from lapse of time, unless there is some mode of avoiding it. The complainant's counsel has urged several modes; the first is, that the statute of limitations of

Rhode Island requires twenty years "uninterrupted quiet, peaceable, and actual seizin and possession," and it is urged, that inasmuch as suits were from time to time brought by persons who claimed under the same title as the complainant, against persons under whom these respondents claim, those suits stopped the running of the statute, though they were not for the same tracts of land sued for in this action, and though all of them finally terminated, against the title relied on by the complainant, and in favor of the title under which the respondents claim. Perhaps it is a sufficient answer to this position to say, that the earliest of these proceedings alleged in the bill was not commenced until December, 1795, twenty-eight years after the adverse possession was begun. But in addition to this, the institution of a suit to recover lands, in which the plaintiff fails, does not interrupt the quiet, peaceable, and actual possession and seizin of the defendant, even where that suit is between the same parties, and for the same land afterwards in contestation; nor does it tend to show that the title or possession of the party seized is defective. On the contrary the more his right is questioned, and the oftener he maintains it successfully, the stronger is the presumption that he is lawfully in possession, and the more clearly and notoriously is his possession adverse and effectual. It would be singular indeed, if the complainant could be assisted to set aside the bar of the statute, by showing that third persons had made repeated attempts to set up the title on which she relies, and had failed in those attempts. It is true, the bill charges that they did recover some verdicts, which were set aside, or appealed from, or reviewed, so that no final judgment was rendered thereon; and it attributes these failures to causes, which being disrespectful to the courts and judges of the state of Rhode Island, should hardly have been stated, without some evidence to support them; and I find no such evidence on the record.

My opinion is, that there was the necessary seizin and possession to constitute a bar, unless the complainant can bring the case within the proviso of the statute, by showing some disability. The facts upon this point are, that the seizin of those under whom the respondents claim, began in 1767. In 1777, Betsy Waterman, the complainant's mother, became of age, and her title would become barred in 1787. Why was not her title then barred? The complainant's counsel makes several answers.

That she was then under coverture. But it is settled that cumulative disabilities cannot be allowed. A party can avail himself only of the disability which existed when the title was acquired. There are many decisions that if an infant marry, her right of action is barred when the time allowed to her, as an infant, has expired, although she may then be under coverture. But it is enough to refer to the decision of the supreme

court in Mercer's Lessee v. Selden, 1 How. [42 U. S.] 37.

It is also argued that her right was suspended because her husband had an estate by the courtesy in the land. This is not so; for an actual seizin is necessary to create such an estate, and it does not appear that her husband ever entered. Mercer's Lessee v. Selden, supra. Another ground is that Betsy Waterman died before the expiration of ten years, allowed to her, after she became of age. This fact is not averred in the bill, and it has already been stated, that if the complainant desired to avoid the bar of the statute, by bringing her case within any saving in the proviso, it was necessary to plead the facts upon which such exemption is claimed. But if this defect did not exist, the proof fails to show that she died as early as 1787. The only evidence exhibited to the court, on this point, is the testimony of Thaddeus Spencer, who says he never knew the complainant's mother, she must have died many years ago; and Benjamin Thornton, who says he cannot tell when she died,—he don't know how old the complainant was when her mother died, but always understood it was in her infancy, when she was quite young. Now the proof is, that the complainant was about twenty years of age when she was married, in 1804; if so she was born in 1784. Certainly this is not sufficient to show that her mother in fact died as early as 1787. If she died in 1788, the complainant was then only in the fourth year of her age, which might be called in her infancy, when she was quite young, as Thornton heard she was. From whom he heard it, or when; whether the tradition came from sources which would make it evidence, even as to a matter respecting which tradition or reputation is admissible, does not appear. Mima Queen v. Hepburn, 7 Cranch [11 U. S.] 295. It falls far short of proving the fact of her death before 1788, with that certainty which is necessary, to let the complainant in, to overturn a possession of upwards of eighty years' duration. But if this were otherwise, the case of the complainant would not be relieved from the bar. The proviso in the statute of Rhode Island includes only "persons under age, non compos mentis, feme covert, or those imprisoned, or those beyond the limits of the United States, they bringing their suit therefor, within ten years next after such impediment is removed." I consider the true exposition of this statute to be that it is only persons to whom the right first comes; and who are then under disability, who are within the saving clause; and that when the statute has once begun to run, it runs over all subsequent disabilities; and, consequently, if Betsy Waterman died before the expiration of the ten years allowed to her after she became of age, no new period of ten years was allowed to her infant heir, the complainant, and a fortiori, that the complainant was not allowed till her full age; and a multo fortiori, not

another period of ten years to be added thereto. Many of the authorities on this subject are collected in Ang. Lim. 519 et seq., and notes. But even if this were otherwise, the complainant became of age in 1805, her ten years expired in 1815, and the bill was filed in 1851. Here also the supposed life-estate of her father was relied on, as a reason why she was not bound to sue. But, as already shown, he had no life-estate, for the want of actual seizin.

It is also insisted that Benjamin Waterman was the guardian of the complainant's mother, and therefore must be considered as holding the lands which he purchased from the administrator of Manton, as her trustee, and so neither he, nor any one claiming under him, can set up the statute of limitations. To this the case of Mercer's Lessee v. Selden, already referred to, affords an answer. In that case, Selden was the statute guardian of his children, under one of whom the plaintiffs claimed, in right of the descent to that child from its mother. Selden took a conveyance of the land, from a third person, and held possession. When his title was questioned he set up the statute of limitations; and the supreme court of the United States decided it was a legal bar. This is in conformity with repeated decisions of that court. Blight's Lessee v. Rochester, 7 Wheat. [20 U. S.] 535; [Society v. Town of Pawlet] 4 Pet. [29 U. S.] 506; Willison v. Watkins, 3 Pet. [28 U. S.] 53; Bradstreet v. Huntingdon, 5 Pet. [30 U. S.] 440; Boone v. Chiles, 10 Pet. [35 U. S.] 177.

The complainant also relies on her absence from the state. But the rule against cumulative disabilities applies, for her mother was in the state when her right is said to have accrued, and died here; and the complainant was here when her supposed right accrued, and did not remove to New York, until 1795, and of course could not, by then going out of the state, suspend the running of the statute. Besides, whatever may have been the ancient statute of Rhode Island, the present law of limitations does not save the rights of absent persons, unless out of the United States; and it is the existing law which must govern the remedy.

On the whole, I am of opinion, that the statute of limitations affords a complete bar to this bill; and considering that the transactions charged to be fraudulent, occurred upwards of eighty-six years ago; that not only every person in any way connected with these transactions, but all who could possibly have had any knowledge of them, are long since dead; that they grew out of the settlement of an estate at a time when, from the state of the country, and the habits of the people, there was great inaccuracy in such proceedings, and still greater negligence in preserving the evidences of what was done; that it would be impossible to investigate these charges with a reasonable hope of arriving at the truth; and that the bill seeks to disturb possessions after descents, purchases, and

family settlements, which have run through three generations. I think it must be admitted that the case affords a striking exemplification of the wisdom of that statute which forbids further inquiry.

[On the complainant's appeal the case was taken to the supreme court, where the decree of this court was affirmed. 19 How. (60 U. S.) 69.]